IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON KOKINDA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:16-cv-0005 |
| | ) | |
| v. | ) | United State District Judge |
| | ) | Mark R. Hornak |
| PENNSYLVANIA DEPARTMENT OF | ) | |
| CORRECTIONS; RHONDA HOUSE; | ) | United States Magistrate Judge |
| SHELLY A. MANKEY; JOHN DOE #1; | ) | Cynthia Reed Eddy |
| and JOHN DOE #2, | ) | |
| | ) | |
| Defendants. | ) | |

# REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, United States Magistrate Judge**

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' motion to dismiss for failure to state a claim (ECF No. 14) be granted in its entirety.

## II. REPORT

### A. Facts

Plaintiff is a former inmate of the State Correctional Institution at Fayette, Pennsylvania, and brings this action alleging that his civil rights were violated by the above-captioned Defendants based on an incident involving the search of his cell, which he claims was retaliatory. The following recitation of facts is taken from Plaintiff's *pro se* complaint. (ECF No. 3).

On January 14, 2014, Plaintiff wrote a letter to Defendant Shelly A. Mankey, requesting that she provide him with certified prison legal mail logbook entries from December 13, 2013 – January 13, 2014. (*Id.* at ¶ 1). He wanted this information so that he could "prove a breakdown in 'due notice' processes of the court, to justify the granting of 'reinstatement of nunc pro tunc

1

relief' in his 'Post-Conviction Relief Act petition appeal.'" (*Id.*). Plaintiff alleges that because of the seriousness and urgency of these issues, the following day, January 15, 2014, he sent a request slip to Defendant Mankey in which he was "forced to threaten legal action, for First Amendment violations of his 'access to court rights,'" by referencing a large recovery that had recently been awarded to a different *pro se* inmate in a First Amendment access to courts action against the staff at the Pennsylvania DOC. (*Id.* at ¶¶ 2-3). Defendant Mankey denied Plaintiff's request pursuant to the advice of her supervisor, Defendant Rhonda House, stating that there is no policy providing that inmates are entitled to the requested records. (*Id.* at ¶ 4).

Plaintiff claims that Defendant Mankey initially received his request slip on the morning of January 16, 2014. (*Id.* at ¶ 12). The complaint alleges that later that day, in retaliation for Plaintiff sending the request slip, Defendants Mankey and House ordered that Plaintiff's cell be "searched and trashed" by two unknown DOC officers.[1] (*Id.* at ¶¶ 5-6, 11-12, 17).[2] During the cell search, the two officers refused to comply with Plaintiff's "simple polite request to search his boxes last, because of his severe Obsessive Compulsive Disorder." (*Id.* at ¶ 6). One of the officers told Plaintiff that "he didn't care about [his] mental disorders" and threatened "to send [Plaintiff] to the restricted housing unit (the hole), if he dissented any further, so much as a

---

[1] These unknown officers are named in the complaint as Defendants and are referred to therein as John Doe #1 and John Doe #2.

[2] The date that Mankey received Plaintiff's request slip is in dispute. The complaint alleges that the date stamp on the request slip indicates that it was received January 17, 2014, the day *after* the cell search. (Compl. at ¶ 12). However, Plaintiff alleges that based on "the confrontational and egregious pre-scripted actions evinced by the correctional officers" during the search, it was obvious that Mankey received the request slip the morning of the search. (*Id.*). According to Plaintiff, the request slip was stamped as being received on January 17, 2014 for purposes of "cover[ing]-up evidence of 'causal nexus,'" which is the third element of a First Amendment retaliation claim. (*Id.*); *see Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (setting forth elements of First Amendment retaliation claim). Drawing all reasonable inferences in a light most favorable to Plaintiff, the Court will assume for purposes of this motion that the request slip was received by Mankey on January 16, 2014, notwithstanding that it was stamped on the following date.

word." (*Id.* at ¶ 7).

Plaintiff claims that the way in which the officers searched his cell led to severe psychological trauma and post-traumatic stress disorder which magnified the triggers of his OCD symptoms and Hallucinogenic Perpetual Persisting Disorder (HPPD) symptoms because "[i]n [Plaintiff's] subconscious mind, [the officers] had completely contaminated" his documents. (*Id.* at ¶¶ 8-9, 14-15). Plaintiff asserts that the officers' search of his cell in this manner was intentionally carried out in "the most adversarial way against him," and that they purposely "disorgrniz[ed] his papers to such an excessive degree" that it amounted to an obstruction of his access to the courts. (*Id.* at ¶¶ 7, 10). As a result of the cell search, Plaintiff "had to act out thousands of complex cleaning rituals to deal with the added post-traumatic stress, in order to suppress the disorientation, emotional distress, severe psychological trauma, sexual dysfunction, and intensely agitating pseudohallucinations that OCD/HPPD causes." (*Id.* at ¶ 15). Because Plaintiff could not discard any of his important court documents, he was "stuck living in various cells (until November 1, 2015 release), with ten-told increased burdens of his OCD/HPPD symptoms from that day forward (i.e., having to wash his hands and washable possessions at least ten times as often, fearing to even touch some possessions at all (such as keyboard))."
(*Id.* at ¶ 16).

The complaint requests compensatory damages against Defendants, jointly and severally, in the amount of $500 per day, "for each day following the January 16, 2014 shakedown up until the November 1, 2015 release date," and also seeks punitive damages against each of the Defendants in the amount of $1,500 per day during the same time period.

**B. Procedural History**

Plaintiff initiated this action on January 4, 2016 by filing a motion for leave to proceed *in*

3

*forma pauperis* (ECF No. 1), and his complaint was filed on January 13, 2016. (ECF No. 3). The complaint brings claims under 42 U.S.C. § 1983 for violations of the First, Eighth, and Fourteenth Amendments of the United States Constitution. It also asserts claims under the Americans with Disabilities Act ("ADA"), as well as 42 U.S.C. §§ 1985 and 1986.

Defendants responded to Plaintiff's complaint by filing a motion to dismiss, and brief in support thereof, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 14, 15). They argue that all of the claims in the complaint are deficient as a matter of law, and thus, the entire complaint should be dismissed with prejudice.[3] In support of their argument with respect to Plaintiff's First Amendment access to courts claim, Defendants attached the Pennsylvania Superior Court opinion relating to Plaintiff's PCRA appeal and the court docket from that case. (ECF No. 14-2). Plaintiff filed a brief in opposition to Defendants' motion to dismiss. (ECF No. 17). Accordingly, the matter has been fully briefed and is ripe for recommendation.

C. **Standard of Review – Rule 12(b)(6)**

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and

---

[3] Although they seek dismissal of the entire complaint, Defendants' do not reference Plaintiff's claims under §§ 1985 and 1986. Nevertheless, the Court will address these claims in light of the fact that Plaintiff is proceeding *in forma pauperis* in this action. Based on this *IFP* status, if at any time the Court determines that any of Plaintiff's claims are frivolous or fail to state a claim on which relief may be granted, the Court *must* dismiss those deficient claims. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). As discussed *infra*, Defendants' argument with respect to Plaintiff's Fourteenth Amendment Equal Protection claim – that Plaintiff does not belong to a suspect or quasi-suspect class – is also applicable to the §§ 1985 and 1986 claims.

also "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of the claims. *Connelly v. Lane Cont. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). When analyzing a motion to dismiss, it is appropriate to separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted). Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Moreover, because Plaintiff is proceeding *pro se*, the Court will accord him an even more liberal reading of the complaint, employing less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519 (1972). Additionally, if a *pro se* civil rights complaint is deficient, the court must give the plaintiff a chance to amend within a set period of time, unless amendment would be inequitable or futile. *Grayson v.*

5

*Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). In this context, "'futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

D. **Discussion**

1. **Eleventh Amendment Immunity and Official Capacity Claims**

Defendants first argue that pursuant to the Eleventh Amendment of the United States Constitution, all of Plaintiff's § 1983 claims should be dismissed against the DOC and the individual Defendants acting in their official capacities. The Eleventh Amendment proscribes actions in the federal courts against, *inter alia,* states and their agencies. *Laskaris v. Thornburgh,* 661 F.2d 23 (3d Cir.1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (state agencies). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) (*citing Alabama v. Pugh,* 438 U.S. 781 (1978)).

It is well-settled that the DOC, which administers all state correctional institutions, including SCI-Fayette, is an agency or arm of the Commonwealth of Pennsylvania. Thus, the DOC is entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. *See Steele v. Pennsylvania,* 2009 WL 614800, at *8 (W.D. Pa. 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued, *Wilson v. Vaughn,* 1996 WL 426538 at *1 n. 2 (E.D. Pa. 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *Smith v. Luciani,* 1998 WL 151803 at *4 (E.D. Pa. 1998), *aff'd,* 178 F.3d 1280 (3d Cir.1999) (Table).

Similarly, those individual prison official defendants sued in their official capacities are immune from claims for monetary damages and retroactive equitable relief. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against an entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). The Eleventh Amendment not only bars suits against a state by its own citizens, but also immunizes state defendants sued in their official capacities from liability for damages or equitable relief. Indeed, the Court of Appeals for the Third Circuit recently affirmed this Court's dismissal of this specific Plaintiff's § 1983 claims against the DOC and individual Defendants acting in their official capacities in a different case that is also pending in this Court. *See Kokinda v. Pa. Dep't of Corr.*, ___ Fed. App'x ___, 2016 WL 5864890, *2 & n. 10 (3d Cir. Oct. 7, 2016) ("The District Court was … correct to conclude that the Eleventh Amendment barred Kokinda's claims against the DOC and its employees in their official capacities.") (citing *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) and *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000)).

Further, although Defendants do not address Plaintiff's §§ 1985 and 1986 claims, we note that courts have extended the above analysis to such claims. *See*, *e.g.*, *Owens v. Armstrong*, 171 F.Supp.3d 316, 330 & n. 4 (D.N.J. 2016) (dismissing the official capacity claims against the defendants because "Congress did not expressly abrogate sovereign immunity when it passed §§ 1983 and 1985," and dismissing the § 1986 official capacity claims because "a claim under § 1986 requires a foundational claim under § 1985"); *Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996) ("[I]n § 1983 actions the state's immunity has not been abrogated … Similarly, the state's immunity has not been

abrogated for actions brought under §§ 1981, 1985, and 1986.") (internal citations omitted)).[4]

Consequently, the §§ 1983, 1985 and 1986 claims against the DOC and against the individual Defendants sued in their official capacities should be dismissed. Because there are no additional facts which Plaintiff could plead to cure the highlighted deficiencies, any amendment of these claims would be futile. Accordingly, Plaintiff should be denied leave to amend these claims.

## 2. Section 1983 Claims

### a. First Amendment Claims

The complaint asserts two claims under the First Amendment: (1) retaliation, and (2) access to courts. Defendants argue that both claims are subject to dismissal. The Court will address these claims *seriatim*.

#### i. Retaliation

In the prison context, the elements of a First Amendment retaliation claim are that: (1) the prisoner engaged in constitutionally protected conduct, (2) prison officials took an adverse action against the prisoner that is sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) there is a causal link between the exercise of the prisoner's constitutional rights and adverse action taken against him. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). Defendants do not challenge whether the complaint has satisfied the first element. *See Alex v. Wetzel*, 2015 WL

---

[4] Moreover, the DOC and the individual defendants in their official capacities are not "persons" for the purposes of § 1983. In *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 70-71 (1989), the Supreme Court held that a state is not "a person" subject to § 1983 liability and that the non-person status extends to "governmental entities that are considered arms of the state for Eleventh Amendment purposes." Because as discussed above, the DOC is an arm of the state, *Will* provides an additional basis for the dismissal of the § l983 claims as to the DOC and the individual defendants acting in their official capacities. And the *Will* doctrine is also applicable to such claims brought pursuant to §§ 1985 and 1986. *See Whitaker v. Lehman*, 1991 WL 170858, *1 (E.D. Pa. 1991) ("The Supreme Court's reasoning in *Will* is equally applicable to claims under § 1985 and § 1986 which, like § 1983, apply only to 'persons.'").

433667, *5 (M.D. Pa. 2015) (the filing of inmate requests slips constitutes protected activity for purposes of a First Amendment retaliation claim). Instead, they assert that Plaintiff has failed to establish the second and third elements.

Defendants contend that Plaintiff has failed to plead the second element because the cell search described by Plaintiff is not adverse action sufficient to deter a person of ordinary firmness from exercising his constitutionally protected activities. The Court agrees. Although Plaintiff alleges that the cell search had a particularly severe subjective impact on him, this inquiry is governed by an *objective* standard in which we determine whether the adverse action "would deter a *reasonably firm prisoner* from exercising his First Amendment rights." *See Mitchell*, 318 F.3d at 530 (emphasis added); *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). In general, "courts have consistently held that a cell search is not an 'adverse action' for retaliation purposes." *Curtician v. Kessler*, 2010 WL 6557099, *7 (W.D. Pa. 2010) (collecting cases); *see also Banks v. Rozum*, 2015 WL 1186224, *7 (M.D. Pa. 2015) ("[T]he search of a cell is not a sufficient adverse action for purposes of a retaliation claim, irrelevant of whether it is intentional."), *aff'd*, 639 Fed. App'x 778, 781-82 (3d Cir. 2016) (the plaintiff "failed to state any constitutional claim concerning the searches of his cell and any property that was allegedly confiscated or damaged in those searches" and "the alleged actions that [the plaintiff] pleaded he endured were not sufficiently adverse to state a [First Amendment retaliation] claim"); *Dickerson v. Gordon*, 2015 WL 5785575, *6 (M.D. Pa. 2015).

In this case, Plaintiff alleges that that the Defendants "trashed" his cell on one occasion by scattering his legal documents throughout his cell. In Plaintiff's "subconscious mind," Defendants had completely defiled and contaminated these legal documents, which Plaintiff could not discard due to their importance. Thus, he was "stuck living in various cells" with these

9

contaminated documents, "with ten-fold increased burdens of his OCD/HPPD symptoms from that day forward (i.e., heaving to wash his hands and washable possessions at least ten times as often, fearing to even touch some possessions at all (such as a keyboard))." Even when accepting as true that this cell search had a significant subjective effect on Plaintiff personally, the Court concludes that when considering the search from the perspective of a reasonably firm prisoner, it did not constitute adverse action for purposes of a First Amendment retaliation claim. *See Drumgo v. Burris*, 2015 WL 4591957, *5 (D. Del. 2015), *aff'd*, __ Fed. App'x __, 2016 WL 4698258 (3d Cir. Sept. 8, 2016) ("Cell searches are an ordinary part of life for prison inmates" and do not generally dissuade inmates from exercising their First Amendment rights).

Likewise, the fact that the guards did not search Plaintiff's cell in the order or way that he politely requested would not deter a reasonably firm prisoner from exercising his First Amendment rights. *See Potter v. Fraser*, 2011 WL 2446642, *8 (D.N.J. 2011) (dismissing the prisoner's retaliation claim because the defendants' searches of his cell on two occasions, in which they threw his t-shirt in the garbage and confiscated his commissary purchases in retaliation for filing his grievances "were not sufficiently adverse"). As there are no other facts in the complaint from which the Court can infer that this single cell search can be considered adverse action from the perspective of a reasonably firm inmate, the complaint fails to state a plausible First Amendment retaliation claim. As such, the Court recommends that Plaintiff's First Amendment retaliation claim be dismissed against all of the Defendants for failure to state a claim.[5] This claim should be dismissed with prejudice, as allowing amendment here would be futile.

---

[5] This determination is not based in any way on Defendants' other argument with respect to the third element, causation. At the motion to dismiss stage, and in light of the liberal pleading standard afforded to *pro se* plaintiffs, the Court finds that the causation argument is premature because it depends on a disputed fact – the date that Mankey received the request slip – which must be construed in Plaintiff's favor at the moment.

### ii. Access to Courts

Under the First and Fourteenth Amendments, prisoners have a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show that (1) they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citation omitted). To survive a motion to dismiss, the complaint "must describe the underlying arguable claim well enough to show that it is 'more than hope,' and it must describe the 'lost remedy.'" *Id.* at 205-06.

Plaintiff's First Amendment access to the courts claim appears to be based on his allegations relating to (1) the denial of his request for the certified prison legal mail logbook entries from December 13, 2013 – January 13, 2014, which he claims would help "prove a breakdown in 'due notice' processes of the court, to justify the granting of 'reinstatement of nunc pro tunc relief' in his 'Post-Conviction Relief Act petition appeal,'" and (2) the search of his cell wherein his legal papers were extremely scattered and disorganized. However, there are no allegations in the complaint that either of these situations resulted in Plaintiff losing a chance to pursue a nonfrivolous or arguable claim in his PCRA appeal before the Pennsylvania Superior Court. Thus, Defendants correctly argue that this claim should be dismissed for failure to sufficiently allege an actual injury.

As noted above, in support of their argument, Defendants attached the Pennsylvania Superior Court's opinion from December 13, 2013 with regard to Plaintiff's PCRA appeal and the docket in that case. *See* (ECF No. 14-2); *see also Com. v. Kokinda*, No. 2687 EDA 2012,

2013 WL 11248504 (Pa. Super. Dec. 13, 2013).[6] There, the Superior Court affirmed the PCRA court's dismissal of Plaintiff's PCRA petition based on the following:

> On appeal, Kokinda raises seven issues for our review. See Appellant's Brief at 2–3. Kokinda's appellate brief consists of an astounding 46 pages of argument, in which he rails against everything from former United States Supreme Court Justice Louis Brandeis's decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938), the "apostasy of law" and the PCRA Court, to JP Morgan, Rockefeller, Rothschild and adhesion contracts. Kokinda's argument is often rambling and disjunctive.
>
> With our standard of review in mind, and after examining Kokinda's appellate brief, the ruling of the PCRA court, as well as the applicable law, we find that Judge Steinberg's ruling is supported by the record and free of legal error. We further find that the PCRA court, to the fullest extent possible, addressed Kokinda's issues raised on appeal. Accordingly, we affirm on the basis of Judge Steinberg's thorough and well-written opinion. See PCRA Court Opinion, filed 2/20/13.

(ECF No. 14-2 at 3-4); *Kokinda*, 2013 WL 11248504, at *1. In light of this decision, it is clearly apparent that Plaintiff cannot establish that he even had a "nonfrivolous" or "arguable" underlying claim. *Monroe*, 536 F.3d at 205.

Moreover, assuming *arguendo* that Plaintiff actually had a "nonfrivolous" or "arguable" claim, the complaint still fails to allege any facts demonstrating that the Defendants' conduct caused him to lose such a claim. All of the events complained of in the complaint occurred *after* the Superior Court's December 13, 2013 decision affirming dismissal of his PCRA petition. The docket in that case reveals that on December 23, 2013, Plaintiff filed a "Petition to Quash Appellee's Brief," which the Superior Court dismissed as moot on January 10, 2014, as it had already dismissed his PCRA appeal. (ECF No. 14-2 at 26). Nevertheless, in a continued effort to challenge the Superior Court's dismissal of his PCRA petition, the complaint herein alleges that Plaintiff sent Mankey the request slip on January 15, 2014 requesting the legal mail logbook

---

[6] The Court may consider these documents at the motion to dismiss stage because they are public records, and because this claim is based upon these undisputedly authentic documents. *Mayer*, 605 F.3d at 230.

so that he could "prove a breakdown in 'due notice' processes of the court, to justify the granting of 'reinstatement of nunc pro tunc relief'" in his PCRA appeal; this request was subsequently denied by Mankey and House. (Compl. at ¶¶ 1-4). The search of Plaintiff's cell, which occurred on January 16, 2014, did not result in any destroyed or missing legal documents. (*Id.* at ¶ 12). To the contrary, he alleges that he retained possession of all of his legal documents, although they were disorganized and in his "subconscious mind" they were completely contaminated and defiled.

Given that the Superior Court had already considered the seven issues made in Plaintiff's "brief consist[ing] of an astounding 46 pages of argument" and affirmed the PCRA court's "thorough and well-written opinion" at the time Plaintiff's request slip was denied and the search of his cell occurred, the amended complaint fails to plausibly show that he suffered an actual injury for purposes of an access to courts claim. Indeed, even after these events occurred, Plaintiff continued filing documents with the Superior Court in an attempt to revive his dismissed PCRA petition.[7] Based on the above, it is clear that Defendants did not cause Plaintiff to lose a nonfrivolous or arguable claim.[8] Therefore, Plaintiff has failed to state a claim for First Amendment access to courts. This claim should be dismissed with prejudice, as allowing amendment here would be futile.

### b. Eighth Amendment Claim

The complaint alleges that Defendants' one-time search of Plaintiff's cell violated the Eighth Amendment. The Eighth Amendment prohibits the infliction of "cruel and unusual

---

[7] Specifically, on January 27, 2014, Plaintiff filed an "Application to Reinstate Appellate Rights Nunc Pro Tunc," which the Superior Court denied on February 27, 2014; and on April 8, 2014, he filed a "New Application to Reinstate Appellate Rights Nunc Pro Tunc or Remove False Judgment Order from Docket/Assign True Panel," which the Superior Court denied on April 11, 2014. (ECF No. 14-2 at 26).

[8] In this regard, Plaintiff's attempts to have the Superior Court reconsider its decision on three different occasions after it affirmed dismissal of his PCRA petition were clearly without merit.

13

punishments." U.S. CONST. amend. VIII. In *Hudson v. Palmer*, the Supreme Court held that prisoners do not have a legitimate expectation of privacy in their prison cells, and therefore, the Fourth Amendment's protections are unavailable to prisoners. 468 U.S. 517, 530 (1984). However, *Hudson* emphasized that a prisoner may nonetheless have other remedies, including the Eighth Amendment's protection against "cruel and unusual punishments," if a prison guard's conduct in searching the prisoner's cell amounts to "calculated harassment unrelated to prison needs." *Id.* (prison officials cannot "ride roughshod over inmates' property rights with impunity").

Relying on *Hudson*, courts have recognized that a cell search "could be so intrusive as to violate an inmate's Eighth Amendment's rights." *Kinard v. Bakos*, 566 Fed. App'x 102, 104 (3d Cir. 2014). However, because "the Eighth Amendment protects prisoners from the 'misery inflicted through frequent retaliatory cell searches,'" *Rustan v. Rasmussen*, 208 F.3d 218, *2 (8th Cir. 2000) (Table) (citation omitted), a single cell search is generally insufficient to constitute an Eighth Amendment violation. *Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989); *see also Tate v. Campbell*, 85 Fed. App'x 413, 417 (6th Cir. 2003) ("[T]he single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation."); *Chevere v. Johnson*, 38 F.3d 1220, *2 (10th Cir. 1994) (Table) (holding that a single incident of the guard stepping on a Puerto Rican flag and allowing a crucifix to fall on the floor during a cell search did not violate the Eighth Amendment). Indeed, courts have found that even sporadic searches of an inmate's cell do not violate the Eighth Amendment. *Compare Banks v. Beard*, 2006 WL 2192015, *10-11 (W.D. Pa. 2006) (less than a handful of searches over the period of several months did not violate the Eighth Amendment), *and McKeithan v. Jones*, 2005 WL 1324878, *2 (M.D. Pa. 2005) (one search about every eleven days did not violate the Eighth Amendment), *and*

*Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J. 1993) (three searches, which were not repetitive, did not violate the Eighth Amendment), *with Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (ten "retaliatory cell searches, some of which resulted in the violent dishevelment of [the inmate's] cell" over the course of nineteen days constituted an Eighth Amendment violation), *and Evans v. Collins*, 42 F.3d 640 (5th Cir. 1994) (inmate who alleged "two months of repeated unauthorized searches" of his cell stated an Eighth Amendment claim).

In this case, there was one alleged retaliatory cell search in which Plaintiff's legal documents were scattered throughout his cell, but none of his property was actually lost or destroyed. Under these circumstances, Plaintiff has failed to state a claim under the Eighth Amendment. *See Dixon v. LaRosa*, 2011 WL 3875806, *17 (E.D. Cal. 2011) (single retaliatory cell search did not violate Eighth Amendment); *see also Schlager v. Beard*, 398 Fed. App'x 699, 700-02 (3d Cir. 2010) (the defendants' conduct of confiscating the prisoner's legal materials as contraband during a cell search, which the prisoner "sought to use … at a hearing in his state criminal case to argue that he is entitled to release from prison," did not violate the Eighth Amendment because it was not a "denial of the minimal civilized measure of life's necessities") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Because allowing amendment of this claim would be futile, it should be dismissed with prejudice.

        **c.**        **Fourteenth Amendment Claim**

The complaint asserts in conclusory fashion that Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment were violated. The Equal Protection Clause requires that all people similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations do not implicate a suspect or quasi-suspect class. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (neither prisoners

nor indigents are suspect classes); *Johnson v. Wenerowicz*, 2011 WL 1399809, *7 (E.D. Pa. 2011) (the mentally ill are not recognized as suspect classes); *Ismail v. Ford*, 2014 WL 1681993, *5 (C.D. Cal. 2014) (noting that there is no authority to suggest that someone who has "obsessive-compulsive disorder or other psychological or emotional condition" belongs to a protected class); *Carter v. Mich. D.O.C.*, 2013 WL 3270909, *13 (W.D. Mich. 2013) (even if the plaintiff's obsessive-compulsive disorder qualified as a disability, disabled persons are not a suspect or quasi-suspect class); *Kokinda v. Pa. Dep't of Corr.*, 2:16-cv-1303, 2016 WL 5137991, *2 (W.D. Pa. Sept. 20, 2016) (the combination of "persons suffering from mental illness, with food allergies, whose civil rights are being violated on the basis of them being the most vulnerable" is not a suspect class). As such, "the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 423 (3d. Cir. 2000) (quoting *Cleburne*, 473 U.S. at 440-42).

To state a claim under the Equal Protection Clause pursuant to a "class of one" theory, a complaint must allege that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of WIllowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Where there is no discrimination, there is no equal protection violation." *Tillman*, 221 F.3d at 424. Here, the complaint asserts that Defendants' actions of searching his cell were carried out in retaliation for Plaintiff sending the request slip, not because of discrimination.[9] Thus, this claim should be dismissed. Because

---

[9] *See* Compl. at ¶ 12 ("It is well known among inmates, that the search teams have a predetermined list of certain prisoners that they target for retaliatory shakedowns (typically requested by Unit Managers), who are thorns in the sides of officials for any reason; generally for filing grievances or litigation. And, it was obvious that Mr. Kokinda was on this list due to his Request Slip being received by Ms. Mankey that morning … and the confrontational egregious pre-scripted actions evinced by the correctional officers."); *id.* at ¶ 17 (Defendants searched his cell because "they are indoctrinated to retaliate against any inmates dissenting to their official oppressions"); *id.* at ¶ 20 ("And, the officials would not have retaliated against [Kokinda] in such an unconscionable manner, if not for Ms. Mankey receiving his First Amendment

allowing Plaintiff to amend this claim would futile, it should be dismissed with prejudice.

### 3. Claims under §§ 1985 and 1986

The complaint also cites to 42 U.S.C. § 1985(3). The Supreme Court has interpreted § 1985(3) as "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge,* 460 U.S. 719, 725. (1983). It is a well-settled that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id*. at 726. This claim should be dismissed because the complaint does not allege any actionable form of "invidious discriminatory animus" against an identifiable class. *See Farber v. City of Paterson,* 440 F.3d 131, 135 (3d Cir. 2006). As discussed above, Plaintiff does not belong to suspect or quasi-suspect class, or an otherwise protected or identifiable class. There are simply no factual allegations in the complaint to support its legal conclusions claiming that invidious discrimination occurred against Plaintiff at SCI-Fayette as a result of his membership in a protected class. As such, this § 1985(3) claim should be dismissed.

Consequently, Plaintiff's § 1986 claim should also be dismissed. A violation of § 1986 requires an underlying violation of § 1985. Thus, "if the claimant does not set forth a cause of action under the latter, [his] claim under the former must also fail." *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696-97 (3d Cir. 1980). Because Plaintiff's § 1985(3) claim should be dismissed for failure to state a claim, it follows that his § 1986 claims should likewise be dismissed. Both of these claims should be dismissed with prejudice, as allowing amendment here would be futile.

---

constitutionally protected speech – threatening litigation, for 'access to court' violations in the immediate duration before shakedown.").

### 4. ADA Claim

It appears that Plaintiff is asserting a claim under Title II of the ADA because the Defendants did not comply with his polite request to search his cell in a specific order. The Supreme Court has held that Title II of the ADA applies to discrimination against prisoners confined in state correctional institutions. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). However, "Title II of the ADA does not provide for suits against state officers in their individual capacities." *Matthews v. Pa. Dep't of Corr.*, 613 Fed. App'x 163, 169-70 (3d Cir. 2015) (citing *Garcia v. S.U.N.Y Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) and *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc)). Additionally, since Plaintiff has been released from prison and is not seeking any prospective relief, only monetary damages, he cannot bring official capacity claims against the individual Defendants. *Koslow v. Comm. of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002). Therefore, Plaintiff's claim under Title II of the ADA should be dismissed against the individual Defendants in both their official and individual capacities, and this claim will only be assessed with respect to the DOC.

To state a claim under Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied of benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Brown v. Deparlos*, 492 Fed. App'x 211, 215 (3d Cir. 2012) (citing 42 U.S.C. § 12132). Defendants challenge whether Plaintiff has satisfied the second element. The Court agrees with Defendants that the guards' refusal to search Plaintiff's cell in a particular order plainly did not exclude Plaintiff from participating in or deny him of any benefits of the jail's services, programs, or activities.

Accordingly, Plaintiff's claim under Title II of the ADA should be dismissed with prejudice, as allowing amendment here would be futile.

### III. CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendants' motion to dismiss (ECF No. 14) be granted in its entirety, and that Plaintiff's complaint (ECF No. 3) be dismissed with prejudice.

In accordance with 28 U.S.C. § 636(b)(1)(B), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and Local Civil Rule 72.D.2, any party may file Objections to this Report and Recommendation on or before November 14, 2016. Unless the District Judge orders otherwise, a party may respond to the other party's Objections within fourteen (14) days from the date that the Objections are filed. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

Dated: October 31, 2016.

cc: **The Honorable Mark R. Hornak**
(*via CM-ECF*)

**Jason Kokina**
(*via CM-ECF at jkoda@jkoda.org*)

**Timothy Mazzocca**
(*via CM-ECF at tmazzocca@attorneygeneral.gov*)